MAKAR, J.,
specially concurring.
This case is another in which a restitution victim — this time a public school system — must navigate the legal waters to establish its losses, ones that oftentimes are not recovered from juvenile offenders.[1] After a hearing at which school officials testified, the trial court entered a net restitution order requiring D.J.R. to pay a total of $5,775 (in 231 monthly installments of $25) to replace electronic devices (eight computers, microphones, a metronome, and a digital camera), an acoustic guitar, and, among other items, a $2 bill that he stole from an elementary school. Adjust *460 ments were made for items recovered. The ripple effects of the theft deprived students and teachers of the benefit of the use and content of the computers for over nine months.
D.J.R. challenges only the portion of the award for three stolen computers, each having instructional and other educational materials that took teachers months of their time to prepare and save on the missing machines. These are “special circumstances” that justify using a replacement cost approach rather than fair market value because the latter would not account for the value of the lost content (the cost of commercial software is not at issue because the school’s vendor agreed to provide it on new computers at no extra cost).
The school relied upon the current replacement value for each computer as a rough proxy for the sum of each’s fair market value plus the value of lost content. Replacement values were $1,346, $1,541, and $1,132 for the three computers. Assuming that fair market value for the circa 2009 computers is at least $300 each (a number defense counsel offered from a cell phone search during the hearing), the actual amount at issue in this case is approximately $3,000, which represents a total replacement value of $4,019 (minus total fair market value of $900). This number represents the approximate value of the lost teacher-generated content on the computers, a number the school accepts but which D.J.R. contests.
While it is true that Principal Sanders gave no exact dollar amount to support the value of the lost computer content, she did say that teachers spent, at the very least, five hours per week on the computers over the time period they were in use — from about 2009 until early 2013 when the theft occurred — but she lacked an estimate of an hourly wage. This led the trial judge to conclude that “literally hundreds, if not thousands, of teacher hours” had been expended. Even at Florida’s current minimum wage of $7.93 (which is well below one estimate of the average starting teacher salary in Florida of $35,236),[2] it seems apparent that the value of the lost teacher-generated content could easily exceed $3,000, which is why the trial judge concluded that the amount sought was “conservatively low” and entered the order at issue; and it is why remanding for a new hearing is a Pyrrhic victory for D.J.R. I concur because the restitution order should fully reflect the actual loss to the school in this case.

. See Making Restitution Real: Five Case Studies on Improving Restitution Collection, The National Center for Victims of Crime (2011), http://www.victimsofcrime.org/docs/ ReportsándStudies/ 201 l_restitutionre-port_web.pdf?sfvrsn=2 (highlighting Project Payback, which is a juvenile restitution program started in Alachua County in the late 1990s that focuses on restorative justice by requiring and assisting juvenile offenders to *460 get work, obtain job skills, and repay their victims' losses).

. See 2012-2013 Average Starting Salaries by State, National Education Association, http: //www.nea.org/home/2012-2013-average-starting-teachersalary.html (last visited April 30, 2014).